**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ARLETTE PARKER, as Administrator of the Estate of Edward Parker,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 20 C 5496

Hon. LaShonda A. Hunt

**MEMORANDUM OPINION AND ORDER**

Plaintiff Arlette Parker, as administrator of the Estate of Edward Parker, filed this wrongful death action under the Federal Tort Claims Act ("FTCA"). On the eve of trial, Defendant United States of America was granted leave to move for summary judgment on Plaintiff's claim based on its argument that recently discovered evidence established that Plaintiff was not entitled to bring suit because she was not Edward's surviving spouse. (Dkt. 76). Following full briefing, the Court ruled orally that an evidentiary hearing was necessary to resolve factual disputes regarding subject-matter jurisdiction. (Dkt. 102). That hearing was held on July 15-16, 2026. (Dkts. 116, 117). Plaintiff, her prior attorneys Jerome Levy and Colleen Wengler, and a representative of Calahan Funeral Home testified. Upon consideration of the admitted evidence and the written and oral arguments of the parties, for the reasons discussed below, Defendant's motion for summary judgment (Dkt. 77) is denied.

## BACKGROUND

The facts are taken from the parties' Local Rule 56.1 statements, the testimony presented at the hearing, and the evidence in the record.[1] *See* Fed. R. Civ. P. 56(c)(3). Unless otherwise noted, the facts are undisputed. The Court refers to Plaintiff's response to Defendant's statement of facts as "Dkt. 80" and to Defendant's response to Plaintiff's statement of additional facts as "Dkt. 84."

### I. Edward Parker's Marriage to Lorry Parker

On November 23, 1987, Edward Parker married Lorry Tucker in the State of Washington. (Dkt. 80 ¶ 6). At some point, Lorry and Edward separated, but whether they legally divorced is hotly contested.[2] No divorce decree has been produced, and conflicting evidence exists on this issue. (*See* Hearing Tr. 1 at 2002, Dkt. 118) (stipulating to absence of evidence of divorce decree).

On November 8, 2006, Edward filed a complaint for divorce against Lorry in the Circuit Court of Jefferson County, Alabama. (DX8). The state court dismissed the complaint for lack of prosecution on May 29, 2007. (DX9). Edward filed a second complaint for divorce against Lorry in the Jefferson County Circuit Court on June 6, 2007. (DX10). That complaint was also dismissed by the state court for lack of prosecution on January 16, 2008. (DX11).

On June 13, 2011, the Beaufort County Family Court in South Carolina granted Lorry an order of protection against Edward. (DX2). The order identified Lorry and Edward as husband and

[1] The Court notes that the majority of Defendant's responses to Plaintiff's additional fact statements include lengthy, improper legal arguments. A response to a Rule 56.1 statement "may not assert legal arguments except to make an objection." N.D. Ill. L.R. 56.1(e)(2). Thus, legal arguments that do not concern an objection are disregarded. *See also Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) ("[D]istrict courts are not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000))). That said, Plaintiff has not exactly complied with Rule 56.1 either, as improper legal arguments are woven into several of her fact statements, as well as some of Plaintiff's responses to Defendant's fact statements. These legal arguments will be disregarded as well. *See* N.D. Ill. L.R. 56.1(d)(4) (addressing legal arguments in statements of fact).

[2] Because many individuals relevant to this motion share the last name "Parker," the Court will refer to them by their first names for clarity.

wife, and the state court found that abuse occurred on May 26, 2011, while Edward "was moving out." (*Id.*). The order expired on June 13, 2012. (*Id.*).

## II. Edward Parker's Marriage to Plaintiff

Plaintiff met Edward in the fall of 2013. (Hearing Tr. 2 at 2054, Dkt. 119). They dated for about eight or nine months and got married on August 17, 2014, in Skokie, Illinois. (*Id.*; Dkt. 80 ¶ 8). Their marriage application stated that Edward divorced on July 16, 2010. (PX2B). Plaintiff understood from Edward that he was divorced, although she had no knowledge of the date of any such divorce. (Hearing Tr. 2 at 2061, 2068). Plaintiff believed that Edward was divorced because prior to their relationship, he had been in a relationship with Beth Inabinett. (*Id.* at 2056, 2061). Edward and Beth had a son in 2007, and according to Plaintiff, they "were serious." (*Id.* at 2061). Furthermore, Plaintiff and Edward lived in his hometown in South Carolina for a couple of years during their marriage and regularly interacted with Edward's family and children, and no one had ever told or indicated to Plaintiff that Edward was still married to Lorry. (*Id.* at 2057, 2060-2063).

Plaintiff and Edward did not have children together, but they both had children from prior relationships. (*Id.* at 2055-2056; Dkt. 80 ¶ 10). In addition to his son with Beth, Edward had two adult daughters, Christina Parker and Tiana Parker. (Dkt. 80 ¶ 10). Lorry had adopted Christina. (Hearing Tr. 2 at 2056).

## III. Edward Parker's Death and Burial

Plaintiff and Edward lived together as husband and wife until his death on April 29, 2019. (Dkt. 80 ¶ 9). That morning, Calahan Funeral Home retrieved his body from the Veterans Affairs hospital where he died, and Plaintiff called Edward's children to notify them of his passing. (Hearing Tr. 2 at 2063-2064). Plaintiff also spoke with Lorry that morning, with whom Christina

lived, and Lorry gave her condolences but did not say she was still married to Edward. (*Id.* at 2064).

Some days after Edward died, Plaintiff learned from Calahan Funeral Home that Lorry asserted she was still married to Edward and objected to Edward's burial in Chicago. (*Id.* at 2065, 2081-2082). Calahan told Plaintiff that they had Edward and Lorry's marriage certificate. (*Id.* at 2081). According to Plaintiff, this was the first time she heard anything to the effect that Lorry and Edward never divorced. (*Id.*). Shortly after Edward's death, Plaintiff retained attorney Jerome Levy to pursue a wrongful death action concerning Edward. (*Id.* at 2066; Hearing Tr. 1 at 1958). Once Plaintiff learned that Lorry was claiming that she was still married to Edward, Lorry asked Levy to handle that dispute as well. (Hearing Tr. 2 at 2066; Hearing Tr. 1 at 1693).

On the advice of Calahan Funeral Home's attorney, on May 8, 2019, Levy filed a lawsuit on Plaintiff's behalf in the Circuit Court of Cook County, Chancery Division against Calahan Funeral Home and Lorry, seeking authorization to direct the disposition of Edward's remains. (Hearing Tr. 1 at 1964; Dkt. 80 ¶ 12). Paragraph 11 of Plaintiff's verified motion alleged: "Edward Parker represented to Arlette Corine Parker that, on some date many years in the past, he had signed a consent for a divorce action filed by Lorry Tucker Parker." (Def.'s Stmt. of Facts (DSOF), Ex. 7 (2019 Motion) at 1356, Dkt. 79-8). Paragraph 12 alleged: "Arlette Corine Parker believed in good faith at the time of her marriage and continues to believe in good faith that Edward Parker was divorced from Lorry Tucker Parker at the time of the marriage of Arlette and Edward in Chicago in March, 2014[3]." (*Id.*).

Attorney Suzanne Kelliher represented Lorry in the proceeding. (Hearing Tr. 1 at 1965). Levy and Kelliher began communicating, and Levy told Kelliher he had discovered that two years

[3] Reference to a marriage in March 2014 appears to be a scrivener's error. Paragraph 1 of the motion identifies the correct date of August 17, 2014. (*Id.* at 1354).

before Edward died, Lorry filed a bankruptcy petition where she represented that she was not married.[4] (*Id.* at 1966; *see* PX15). Lorry ultimately agreed to allow Plaintiff to control Edward's burial, (Hearing Tr. 1 at 1966), and on June 17, 2019, Kelliher sent a release signed by Lorry to Levy, (DX6).

Later, on June 17, 2019, Levy sent Kelliher a copy of the proposed agreed order authorizing Plaintiff to direct the disposition of Edward's remains. (*Id.*). Kelliher asked that Levy add the language, "For purposes of this proceeding only, [Arlette Corine Parker] is recognized as the spouse of Edward Parker," which Levy agreed to do. (*Id.*). The court entered the agreed order the following day, June 18, 2019. (Dkt. 80 ¶ 20). In accordance with Kelliher's request, the order provided: "That for the purposes of this proceeding only, Arlette Corine Parker is recognized as the individual who was the spouse of the decedent at the time of the decedent's death within the meaning of 755 ILCS 65/5(3)." (*Id.*). The order further provided that "[a]s such, Arlette Corine Parker has the right to control the disposition, including cremation, of the decedent's remains," and dismissed the matter with prejudice. (*Id.*).

## IV. Special Administrator Litigation

On May 9, 2019, the day after filing the lawsuit against Calahan Funeral Home, Plaintiff, again through Levy, filed a petition in the Circuit Court of Cook County, Law Division to be appointed as "Special Administrator of the Estate of Edward Parker for any action brought for the wrongful death of Edward Parker." (PX3). Paragraph 3 of the petition stated: "At the time of his death, Edward Parker left surviving him only his wife, Arlette Corine Parker, his two adult

[4] At the hearing, Levy testified that he hired an investigator to look into Lorry and whether there "was a divorce in the County in Birmingham[, Alabama,]" and the investigator found Lorry's 2016 bankruptcy petition. (Hearing Tr. 1 at 1968, 1986-1987). However, the investigator did not locate Edward's abandoned 2006 and 2007 divorce petitions that had been filed in the Jefferson County Courthouse in Birmingham, Alabama until after this lawsuit was filed. (*Id.* at 2043-2044). Levy also said that at some point he contacted the lawyer who had filed Edward's cases in 2006 and 2007 but she shed no light on why Edward did not pursue those matters. (*Id.* at 2045-2046).

children, Tiana Parker (currently age 37) and Christina M. Parker (currently age 19), and a minor child, Solomon S.R. Inabinett (whose date of birth is . . .).” (*Id.*). (date of birth omitted). Paragraph 4 stated that Edward “was married, at the time of his death, to Arlette Corinne Parker.” (*Id.*). And paragraph 8 provided: “No petition for letters of administration for the Estate of Edward Parker has been filed.” (*Id.*). Plaintiff and Edward’s marriage certificate was attached to the petition as an exhibit. (*Id.*).

Levy sent notice of Plaintiff’s petition to Edward’s children and Lorry on May 14, 2019. (PX13A). The notice stated that the petition was set for presentment on May 30, 2019. (*Id.*). On May 28, 2019, Kelliher sent Levy a letter that said, in relevant part:

> Please be advised that I represent Lorry Parker who has provided to me the attached marriage license showing that she married Edward Parker in 1987. She advises that this marriage was never dissolved. Therefore, any marriage of Arlette Parker to Edward Parker would be invalid and null.
>
> I request that you withdraw (or not present) your Petition to Appoint a Special Administrator. Should your client have any information to demonstrate that the marriage of Lorry Parker and Edward Parker was dissolved, I request that you share such information so that we can promptly address it.

(DX13). Levy agreed to delay the presentation of Plaintiff’s petition. (Hearing Tr. 1 at 1995). Levy testified that he did so because Kelliher said she would talk to Lorry and get back to him, but she never did. (*Id.*).

On June 18, 2019, Levy sent a notice to Lorry, Edward’s children, and Suzanne Kelliher stating that he would present Plaintiff’s petition to the court on July 23, 2019. (PX13B). However, on July 16, 2019, Lorry, though Kelliher, filed a petition for letters of administration in the Circuit Court of Will County, Illinois, seeking to have Tiana appointed as the administrator of Edward’s estate. (PX18A). Lorry’s petition stated that “Petitioner is a wife of decedent and is legally

qualified to act, or to nominate a resident of Illinois to act as administrator." (*Id.*). Because of Lorry's filing, Levy could not present Plaintiff's petition.[5] (Hearing Tr. 1 at 1974).

Attorney Colleen Wengler represented Plaintiff in the Will County matter. (Hearing Tr. 1 at 1862). Plaintiff, through Wengler, filed an objection to Lorry's petition. (*Id.* at 1875). While the parties were briefing Plaintiff's objection, on March 3, 2020, Kelliher emailed Wengler and stated:

> Lorry Parker is making an offer to resolve your client's Objection with a split of any proceeds of the litigation that go to the spouse to be split 20% to Arlette and 80% to Lorry. Lorry was married to him for 25 years and Arlette was with him for 5 years. That is the basis for this split. This offer of resolution is predicated on agreement that Tiana be appointed immediately as the Independent Admin . . . .

(DX7). Kelliher followed up her email with another one saying: "When I say Lorry was married to him for 25 years, I mean it was 25 years (more or less) from the time they were married until he met up with Arlette. I am NOT saying that the marriage of Edward and Lorry ended after 25 years." (*Id.*). Wengler responded the next day and stated, in relevant part, that "Arlette will agree to serve as Co-Administrator with Tianna, appointed in Cook County to pursue the cause of action and will agree to consider the distribution of settlement proceeds at a later date." (*Id.*). Lorry did not accept Plaintiff's counterproposal. (Hearing Tr. 1 at 1897).

Wengler issued discovery to Lorry in the Will County matter, and Lorry responded on July 22, 2020. (PX19D). In her discovery responses, Lorry stated that she and Edward "were always husband and wife until his death." (*Id.*). In response to the request to admit that she filed for bankruptcy in the Northern District of Alabama in 2016 and represented that she was "Not

[5] Under Illinois's Wrongful Death Act, "[o]nce a petition for issuance of letters of administration of a decedent's estate has been filed, the trial court no longer has the authority to appoint a special administrator for the purpose of prosecuting a wrongful death action." *Kubian v. Alexian Bros. Med. Ctr.*, 272 Ill. App. 3d 246, 252 (2d Dist. 1995).

Married," Lorry responded, "Admitted that Lorry Parker filed bankruptcy in 2016, but all other statements are denied. Lorry Parker's counsel prepared and filed all documents." (PX19F).

Ultimately, Lorry agreed to withdraw her petition before the Court held a hearing on Plaintiff's objection. (Hearing Tr. 1 at 1869; *see* PX22). On August 14, 2020, Lorry filed a document with the Will County Circuit Court titled "Withdrawal of Petition of Letters of Administration," wherein she requested "that an Order be entered dismissing this action without prejudice." *In re: the Estate of Edward Parker*, No. 19 P 642. Kelliher subsequently submitted a proposed order, and the judge entered it on September 10, 2020. (Hearing Tr. 1 at 1871-1872). The order provided: "Lorry Parker is granted leave to withdraw her Petition for Letters of Administration and this case number is dismissed without prejudice." (PX20).

According to Wengler, Lorry decided to withdraw her petition and dismiss the action because she thought she was going to lose at the hearing on Plaintiff's objection. (Hearing Tr. 1 at 1900). Wengler got this impression after Lorry failed to timely respond to Plaintiff's requests to admit, and Wengler told Lorry's counsel that she considered each item admitted as a result. (*Id.*; *see* PX22)

On September 16, 2020, Plaintiff filed this suit in federal court.[6] (Compl., Dkt. 1). The complaint alleged that Plaintiff "is to be appointed as Administrator of the Estate of Edward Parker, Deceased, by the Circuit Court of Cook County." (*Id.* ¶ 4). The next day, Levy mailed a notice addressed to Edward's children regarding Plaintiff's petition to be appointed the special administrator of the estate. (PX13D). This time, the notice stated that Plaintiff's petition would be presented to the Cook County Circuit Court on September 25, 2020. (*Id.*). Levy testified that he

[6] Previously, on January 28, 2020, Plaintiff had submitted a Standard Form 95 ("SF-95"), an administrative tort claim, that identified her as the claimant and "widow of the deceased, Edward Parker," to the U.S. Department of Veterans Affairs, which issued a denial letter on February 22, 2021. (Dkt. 80 ¶ 1).

did not address this notice to Lorry like the previous notices because she is not Edward's heir and, in any event, lived with Christina (who was sent the notice). (Hearing Tr. 1 at 2035-2037).

Lorry did not file an objection to Plaintiff's petition; nor did anyone else. (*Id.* at 1978). On September 29, 2020, the Circuit Court issued an order appointing Plaintiff "as the Wrongful Death Special Administrator, pursuant to 740 ILCS 180/2.1, for purposes of prosecution [of this case] in federal court." (DSOF, Ex. 2 (2020 SA Order), Dkt. 79-3).

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *id.* at 324, and support their position with "more than a scintilla of evidence," *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). Summary judgment is the time for a litigant to "put up or shut up" by "show[ing] what evidence it has that would convince a trier of fact to accept its version of events." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) (internal quotation marks omitted) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020)). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, all "justifiable" inferences are drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255. Additionally, a court must refrain from weighing evidence or making credibility determinations. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). Finally, "[s]peculation cannot create a genuine issue of fact that defeats summary judgment." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024).

**DISCUSSION**

"The FTCA provides a limited waiver of the federal government's sovereign immunity." *Alinsky v. United States*, 415 F.3d 639, 643 (7th Cir. 2005). The statute opens the government to tort liability only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). "Because the FTCA is, in effect, a jurisdictional statute, the failure to establish adequately compliance with § 1346(b) deprives the court of subject matter jurisdiction over the suit." *Misany v. United States*, 826 F.2d 612, 614 (7th Cir. 1987).

Under Illinois law, a marriage entered into prior to the dissolution of an earlier marriage is void. *Cardenas v. Cardenas*, 12 Ill. App. 2d 497, 505 (1st Dist. 1956) (collecting cases); *see* 750 ILCS 5/212(a)(1). In its motion for summary judgment, Defendant argues that Edward was still married to Lorry when he "purportedly married" Plaintiff, and therefore, Plaintiff is not Edward's surviving spouse. (MSJ Mem. at 1307, Dkt. 78). According to Defendant, this means that (1) the order appointing Plaintiff the special administrator of Edward's estate ("Appointment Order") is void because Plaintiff was not authorized to seek such an appointment under Illinois's Wrongful Death Act; (2) Plaintiff's wrongful death claim is barred by sovereign immunity because no private person would be liable to Plaintiff under these circumstances; and (3) Plaintiff failed to satisfy the

FTCA's exhaustion requirement because she "could not file an administrative claim on behalf of the estate and did not acquire the ability to do so through her defective appointment." (*Id.* at 1307-1308).

In response, Plaintiff contends that Defendant's arguments are unavailing because they depend on the "unsustainable contention that at the time of Edward Parker's death . . . Arlette was neither his legal wife nor his putative wife."[7] (Resp. at 1556).

## I. <u>Plaintiff's Appointment as Special Administrator</u>

The principal question before the Court is whether the Appointment Order was void *ab initio*, or from the beginning. The parties devote much discussion to the legality of Plaintiff and Edward's marriage, but the Court need not decide whether their marriage was in fact valid. The Appointment Order authorized Plaintiff to sue Defendant for Edward's death under the Illinois Wrongful Death Act. So unless Defendant shows that the Appointment Order is void, the Court has subject-matter jurisdiction, and this case may proceed, provided Plaintiff exhausted administrative remedies.

Under Federal Rule of Civil Procedure 17(b)(3), capacity to sue is determined by the law of the state where the court is located, which in this case is Illinois. Illinois's Wrongful Death Act provides that a "court may appoint a special administrator upon the motion of any person who would be entitled to a recovery under the Act for the purpose of prosecuting or defending a wrongful death action." *Lair v. Reyes*, No. 3:18-CV-1017, 2020 WL 1158173, at *2 (S.D. Ill. Mar. 10, 2020) (citing 740 ILCS 180/2.1). "Only the surviving spouse of or the next of kin of the

[7] Plaintiff also argues that the affirmative defenses Defendant relies on have been waived. (Resp. at 1556, Dkt. 82). However, Defendant's arguments concern Plaintiff's compliance with § 1346(b), which goes to the Court's subject-matter jurisdiction. *See Misany*, 826 F.2d at 614. Objections to subject-matter jurisdiction can be raised at any time. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

decedent may recover under the Act." *Id.* (citing 740 ILCS 180/2.1). Thus, "only a surviving spouse or next of kin may move an Illinois court to appoint a special administrator of a decedent's estate." *Id.*

Defendant argues that Plaintiff is not Edward's surviving spouse and, as a result, was not "among the class of persons who could seek the appointment of a special administrator." (MSJ Mem. at 1311). Even assuming, *arguendo*, that this contention is accurate, the Appointment Order is not necessarily void. In Illinois, a court order or judgment is void "only where there is a total want of jurisdiction in the court which entered the judgment, either as to the subject matter or as to the parties." *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998) (internal quotation marks omitted) (quoting *Johnston v. City of Bloomington*, 77 Ill. 2d 108, 112 (1979)). Accordingly, an administrator's appointment, "however erroneous it may be," may only be collaterally attacked if the rendering court lacked jurisdiction, *In re Redmer's Est.*, 348 Ill. App. 76, 81 (2d Dist. 1952), or if the appointment was obtained by fraud which gave the court merely "colorable jurisdiction," *Schwarz v. Schwarz*, 27 Ill. 2d 140, 145 (1963).

Fraud giving a court colorable jurisdiction is known as "extrinsic fraud," and it "occurs in situations where an unsuccessful party has been prevented from fully exhibiting his case by being kept away from the court or is kept from gaining knowledge of the suit." *In re Adoption of E.L.*, 315 Ill. App. 3d 137, 154 (1st Dist. 2000). "'Intrinsic fraud,' on the other hand, is fraud that occurs after the forum court acquires jurisdiction, such as false testimony or concealment." *Doctor's Assocs., Inc. v. Duree*, 319 Ill. App. 3d 1032, 1043 (2001). Only extrinsic fraud renders a judgment void. *Adoption of E.L.*, 315 Ill. App. 3d at 154.

In sum, the Appointment Order is only void if (a) the Circuit Court lacked subject-matter or personal jurisdiction, or (b) Plaintiff procured it through extrinsic fraud. *See id.*; *Marriage of Mitchell*, 181 Ill. 2d at 174. As explained below, neither condition is met.

Defendant does not argue that the Appointment Order was obtained through extrinsic fraud. Any such argument would fail considering there is no genuine dispute that Plaintiff provided notice to all of Edward's "next of kin" about her petition that was ultimately granted. (PX13A, PX13B, PX13C, PX13D). The Court acknowledges that Levy specifically sent notice to Lorry about the petition filed in May 2019 and the presentment date in July 2019, but not the final petition filed in September 2020. Levy presumed that because notice of the September 2020 petition was sent to Christina and she lived with Lorry, that was sufficient. Not necessarily. If there was any question about whether Lorry qualified as Edward's surviving spouse, out of an abundance of caution, she should have been sent notice directly.[8]

Even so, the undisputed record reflects that Lorry had asserted the claim twice and backed down each time when challenged—in June 2019 by agreeing that Plaintiff could control the burial of Edward's remains as his "surviving spouse" and in August 2020 by withdrawing her petition of

[8] Plaintiff's decision (through Levy) to deliberately exclude Lorry from the notice list (after previously including her and then fighting for a year in probate court about the status of Lorry's marriage to Edward without resolution) was shortsighted and unwise. It opened the door to the suggestion that they were attempting to mislead the Circuit Court by omission and circumvent notice requirements in an effort to avoid an objection from Lorry that could derail Plaintiff's appointment. Similarly, Plaintiff (through Levy) did not fully disclose the substance of the Will County proceedings during discovery in this case, even though Defendant had asked about relevant litigation. Had she timely provided the relevant documents—as opposed to the Court having to obtain court records from Will County and disseminate them to the parties—the significant delay in this almost 7-year-old case could have been avoided. Indeed, Defendant could have cross-moved for summary judgment in 2022, when Plaintiff moved for summary judgment on liability, and this question would have been settled. That said, the Court had the opportunity to hear and observe Plaintiff and Levy when they testified at the hearing. Under these circumstances, where Lorry appeared to have fully relinquished any surviving-spouse claim by the time Plaintiff petitioned for appointment in 2020, the Court cannot say that their position that the validity of Plaintiff's marriage to Edward was settled was unreasonable. However, they certainly violated the spirit and intent of the discovery rules by not being more forthcoming sooner. No doubt that it can be disturbing after the sudden death of a beloved spouse to deal with unanswered questions about his truthfulness. To be sure, Defendant's repeated characterization of Plaintiff as a bigamist was unnecessarily inflammatory and provoked a strong reaction. But Plaintiff's insistence that Lorry and others were lying did not excuse her from the obligation to afford Defendant a full and fair opportunity to investigate and prepare its defenses.

letters of administration as Edward's "surviving spouse." Tellingly, to date, Lorry has never attempted to intervene in this FTCA litigation much less offered testimony or even a sworn statement averring that she and Edward were not divorced. The Court recognizes that Lorry did make such representations under oath in the Will County proceeding but when pressed to show up and face cross-examination on her claims, she chose not to do so, and ultimately agreed to voluntarily dismiss her petition after repeatedly insisting that she was the surviving wife, not Plaintiff. The Court finds that for all intents and purposes, after August 2020, Lorry appears to have willingly abandoned any claim that she and Edward remained married. As such, nothing in this record supports a finding that Plaintiff was not properly appointed as special administrator by the state court in September 2020.

Defendant erroneously contends that the state court lacked jurisdiction to enter the Appointment Order because Plaintiff was not legally entitled to seek it under the Wrongful Death Act. In support of its argument, Defendant cites *Gaston v. Hypolite*, where the district court concluded that the state court's appointment of the plaintiff as a special administrator under the Wrongful Death Act was void. No. 10 C 3244, 2010 WL 4179368, at *2 (N.D. Ill. Oct. 18, 2010). First, even relevant district court opinions are not binding on this Court. *See G.M. Sign, Inc. v. Glob. Shop Sols., Inc.*, 430 F. Supp. 2d 826, 829 n.4 (N.D. Ill. 2006) ("Decisions of district courts are not binding precedent, even on the same court."). Second, *Gaston* is distinguishable factually because in that case, it was undisputed that the plaintiff was not the decedent's spouse, as he had represented in the petition for appointment. *Gaston*, 2010 WL 4179368, at *2. In fact, the plaintiff had engaged in fraud on the court by knowingly making false statements that he and the decedent were still married, even though the state court had entered a judgment for dissolution of their marriage three years earlier. *Id.* at *1. And when confronted with this lie after the defendant

removed the case to federal court, the plaintiff offered no defense. *Id.* Voiding the appointment and granting judgment in favor of the defendant in that situation was appropriate. *Cf. In re Adoption of E.L.*, 315 Ill. App. 3d at 155 (explaining that the trial court erred in not finding that it had failed to acquire jurisdiction due to the fraudulent course of conduct).[9]

Defendant mistakenly conflates two separate legal concepts—Plaintiff's standing to seek the Appointment Order, and the Circuit Court's jurisdiction. Illinois recognizes two kinds of standing, common law standing and statutory standing. *People v. Johnson*, 2021 IL 125738, ¶ 31. Defendant's argument concerns Plaintiff's statutory standing, "which requires the fulfillment of legislative statutory conditions to sue for legislatively created relief." *Id.*; *see also Wilson v. Tromly*, 404 Ill. 307, 310 (1949) ("[T]he legislature, having conferred a right of action for death by wrongful act, may determine who shall sue, and the conditions under which the suit may be brought."). "Under Illinois law (in contrast to federal law), standing has nothing to do with subject-matter jurisdiction." *People v. Four Thousand & Eight Hundred Fifty Dollars ($4,850) U.S. Currency*, 2011 IL App (4th) 100528, ¶ 14 (citing *Lebron v. Gottlieb Mem'l Hosp.*, 237 Ill. 2d 217, 253-254, 254 n.4 (2010)). Instead, lack of standing is an affirmative defense. *Clarke v. Cmty. Unit Sch. Dist. 303*, 2012 IL App (2d) 110705, ¶ 36. Thus, Plaintiff's standing, or lack thereof, to seek the appointment of a special administrator under the Wrongful Death Act had no bearing on the Circuit Court's subject-matter jurisdiction. *Cf. Neighborhood Lending Servs., Inc. v. Callahan*, 2017 IL App (1st) 162585, ¶ 23 ("[E]ven if NLS did lack standing, that would not support Sanders's contention that the circuit court's orders were, therefore, void for lack of jurisdiction.").

---

[9] Plaintiff maintains that *Gaston* was wrongly decided. To the contrary, the district court's decision did not implicate any concerns about improper collateral attacks or review of state court decisions. *Gaston*, 2010 WL 4179368 at *2 n.3.

The Circuit Court had subject-matter jurisdiction because Plaintiff's petition presented a "justiciable matter." *See Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335 (2002) ("Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests."). By statute, petitions for appointment as special administrator to adjudicate a wrongful death claim on behalf of the decedent fall within the purview of state trial courts. 740 ILCS 180 *et seq.* And the court had personal jurisdiction over Plaintiff because she filed the petition. *See In re M.W.*, 232 Ill. 2d 408, 426 (2009) (explaining that "a petitioner or plaintiff submits to the jurisdiction of the court by filing a petition or complaint"). In short, the Circuit Court had jurisdiction to enter the Appointment Order regardless of whether Plaintiff is Edward's surviving spouse.

At best, the Appointment Order is voidable, rather than void, meaning that it was "entered erroneously by a court having jurisdiction." *Marriage of Mitchell*, 181 Ill. 2d at 174. But a voidable judgment "is not subject to collateral attack." *Id.* Where, as here, "a court has acquired jurisdiction, an order will not be rendered void merely because of an error or impropriety in the issuing court's determination of the law." *Id.* Indeed, in the absence of allegations of fraud, i.e., some sort of knowledge that the statements being made are false, which the Court does not find present here, "[h]owever erroneous the appointment might have been, it was not void." *Daniels v. USS Agri-Chemicals,* 975 F.2d 376, 383-383 (7th Cir. 1992).

Because Defendant has failed to show that the Circuit Court of Cook County lacked jurisdiction or had only "colorable jurisdiction" to enter the Appointment Order, it is not void. *Schwarz*, 27 Ill. 2d at 145; *see Redmer's Estate*, 348 Ill. App. at 81.

## II. **Exhaustion**

Having determined that the Appointment Order is not void and therefore subject-matter jurisdiction exists, the Court must now consider Defendant's argument that Plaintiff failed to exhaust administrative remedies.

The FTCA prohibits "would-be tort plaintiffs from bringing suit against the government unless the claimant has previously submitted a claim for damages to the offending agency." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014); *see* 28 U.S.C. § 2675. The purpose of this exhaustion requirement is to give agencies "an opportunity to settle disputes before defending against litigation in court." *Id.* The FTCA's exhaustion requirement "is not jurisdictional" and "can be waived or forfeited, or otherwise forgiven" as a result. *Glade ex rel. Lundskow v. United States*, 692 F.3d 718, 723 (7th Cir. 2012). The exhaustion requirement "is better characterized as a 'condition precedent to the plaintiff's ability to prevail.'" *Smoke Shop*, 761 F.3d at 786 (quoting *Kanar v. United States*, 118 F.3d 527, 530 (7th Cir. 1997)). Accordingly, the exhaustion requirement has no bearing on the Court's subject-matter jurisdiction, but it bears on the merits of Plaintiff's suit. *See Crenshaw v. United States*, No. 17-2304, 2020 WL 5579180, at *7 (C.D. Ill. Mar. 24, 2020) ("[I]n this circuit, precedent requires dismissal under Rule 12(b)(6) rather than under Rule 12(b)(1) where this condition precedent has not been satisfied.").

An FTCA administrative "claim based on death may be presented by the executor or administrator of the decendent's [sic] estate, or by any other person legally entitled to assert such a claim in accordance with applicable State law." 28 C.F.R. § 14.3(c). Here, Defendant argues that Plaintiff could not satisfy the FTCA's exhaustion requirement because she "did not fit any of the categories of persons who could present an administrative claim for wrongful death to the [U.S. Department of Veterans Affairs ("VA")]." (MSJ Mem. at 1319-1320). According to Defendant,

"when [Plaintiff] submitted her administrative claim to the VA in January 2020, she was neither the special administrator of [Edward's] estate, nor his surviving spouse, nor his next of kin" and therefore failed to comply. (*Id.* at 1320).

The Court disagrees. Even if Plaintiff was not entitled under Illinois law to assert a wrongful death claim at the time she filed the SF-95, she later became entitled to do so once the Circuit Court appointed her a special administrator. Thus, Plaintiff's purported noncompliance had no effect. The Seventh Circuit has explained that "[s]o long as the proper agency had the opportunity to settle the claim for money damages before the point of suit . . . technical deficiencies in the administrative claim could well be a case of '[n]o harm, no foul.'" *Smoke Shop*, 761 F.3d at 787 (second alteration in original) (quoting *Kanar*, 118 F.3d at 531). Noncompliance with the FTCA's requirements for administrative claims "is only fatal if it can be said to have 'hinder[ed]' or 'thwarted' the settlement process 'that Congress created as a prelude to litigation.'" *Id.* (alteration in original) (quoting *Kanar*, 118 F.3d at 531); *see Kanar*, 118 F.3d at 531 (finding noncompliance fatal where agency requested information missing from claim, claimant's attorney failed to provide the information, and agency closed the file as a result).

Here, Plaintiff sent an SF-95 to the VA, and she filed suit after six months had passed without a disposition, pursuant to 28 U.S.C. § 2401(b). (*See* Compl. ¶ 3). The VA subsequently denied the claim as "not amenable to administrative resolution" because Plaintiff had filed suit. (Dkt. 80, Ex. 1 (Levy Decl.) at 1487, Dkt. 80-1). In other words, Plaintiff put the VA on notice of her claim, and the VA got the opportunity to investigate the claim and settle prior to suit as Congress intended. There is no evidence that Plaintiff "hinder[ed]" or "thwarted" the pre-suit settlement process. *Kanar*, 118 F.3d at 531; *see Knapp v. United States*, 844 F.2d 376, 380 (6th Cir. 1988) (finding exhaustion requirement satisfied where claimant was appointed personal

representative after submitting SF-95 because claimant provided sufficient notice); *Est. of Vinberg through Vinberg v. United States*, 636 F. Supp. 3d 1002, 1008 (D. Alaska 2022) (same); *Ford v. United States*, 640 F. Supp. 2d 1065, 1072 (E.D. Ark. 2009) (same). As a result, the Court finds that Plaintiff exhausted administrative remedies in accordance with 28 U.S.C. § 2675.

## CONCLUSION

For all the foregoing reasons, Defendant's motion for summary judgment is denied. The pretrial submission and trial dates (Dkt. 104) stand.

**DATED**: September 24, 2026

**ENTERED**:

LaShonda A. Hunt

LASHONDA A. HUNT
United States District Judge